May it please the Court. Boxer Rothschild on behalf of Appellant Uri Traisman. Members of the Court, it was error for the District Court to preclude Mr. Traisman from developing and presenting his non-forgery defenses in the District Court level based on the outcome of a 50-minute trial that took place in Russia in a parallel proceeding filed by Sberbank of Russia. The non-forgery defenses were never actually litigated in a Russian court and Russian law contains no compulsory joint rule or other legal principle that would require them to be litigated in the foreign court. Similarly, it was error for the District Court not to conduct a fairness and reasonableness analysis required both under principles of international comedy and by principles of preclusion simply because Mr. Traisman earlier in the case moved to dismiss this action on arguing that Russia was a more suitable forum. It was also error for the District Court to preclude Mr. Traisman from developing and presenting his forgery defense notwithstanding the outcome in the Russian case because the unrebutted summary judgment record establishes that the Russian law of preclusion, which is a law that the District Court was duty-bound to apply, is far more circumscribed and far narrower than U.S. law of preclusion, and by blending U.S. law and Russian law to create a common or shared doctrine of preclusion, the District Court failed in its obligation to get Russian law right. Is it your position that under the Russian law of preclusion, it would not have been precluded? Yes, Your Honor. Under Article 61, it is our position, based on the evidence that we submitted, including the unrebutted report of our expert, that under Article 61, Russian law of preclusion does not bar the relitigation of matters when there's new evidence or the relitigation of matters determined based on the outcome of procedural nuances, such as the one drawn by the Russian court. As you may recall, the Russian court ---- The client, with respect to the forgery-related defenses, had every opportunity to make that defense, and as a result, as I understand it, of a failure to or unwillingness to appear, the Russian court ruled against your client on the forgery issue. Yes, that's correct. So my reading of Rule 61 ---- look, I'm no expert on Russian law, perhaps thankfully. But my reading of Rule 61 is it's pretty clear that if you have a dispute that's been resolved, and this was resolved against your client, that would qualify as having preclusive effect under Russian law. Your Honor, our expert opined that Article 61 does not bar the relitigation of matters when there's new evidence. Unlike U.S. law, which looks upon whether the evidence was available and whether the evidence should have been presented, our expert opined that where there was new You say new evidence. What new evidence? There is a variety of new evidence, including the declaration of Yuri Izmagilov, a Sberbank employee who cast serious doubt on the authenticity and genuineness of the documents in question. And there was also ---- You mean you're allowed every time you get a little ---- after a judgment, if you get some new evidence, you're allowed to go back into court and start again? Your Honor, that is precisely what our expert contends, and that expert opinion is unrebutted. Mr. Golden, why should we rely on the expert opinion when the clear language of the procedure law suggests otherwise? Your Honor, the quality of the expert report or the fact that it wasn't sworn was never challenged by Sberbank below. And also, the Court has discretion to give notice and an opportunity to cure if it finds that the technical requirements of 5060 have not been complied with. What if we decide not to listen or not to take into the ---- not to recognize the expert opinion? Where does that leave you? I'm sorry, Your Honor. I did not hear you. If we don't give the recognition to the expert opinion that you're suggesting that we do, where does that leave you? It leaves us with Article 61 and a burden of proof that rests on the summary judgment movement to establish with particularity and with clarity that the Russian law of preclusion would bar the relitigation of these claims. Could you point me to the language of Rule 61? Of Article 61, Your Honor? Of Article 61 of the Russian Code of Procedure that would allow a relitigation of an issue that has been specifically resolved because of new evidence. That's what you're asking for. I concede that there's nothing in the language of Rule 61 that leads to that ---- that leads to that conclusion. That is why we presented expert testimony in subject, and the expert relies on court practice that is cited in his report. It was ---- but just to continue, it was also error for the district court to award prejudgment interest in favor of Sberbank and hold Mr. Traceman essentially accountable for the decline of the ruble and for delay, which is not at all attributable to him but is mostly attributable to the progress of the case. Could you better explain that? How would that ---- how did the decline of the ruble fit into the argument that you're making? It meant ---- it's mentioned expressly in the district court's opinion when the court considers what ---- Well, I take it the decline of the ruble meant that the judgment was worth less in American dollars, and it was because of that that they increased the rate? Correct. You say decline of ruble. Yes, and? Yes, Your Honor. Because of Russia's incursion into Crimea and sanctions passed by President Obama under Executive Order 13661, sanctions had an effect and the value of the ruble fell. The court, for some inexplicable reason, notes the fall of the ruble as one of the several factors that it considered in increasing the amount of prejudgment interest. Do you understand, or can you explain to me what the court thought it was doing when it did that? Rewarding Sberbank for the fact that its judgment had reduced in value over the interim period and punishing Mr. Traceman for actions, the economic consequences of Russia's foreign policy. Did it reduce in value in U.S. currency but not in Russian? Correct. It reduced in value in U.S. currency and consequently increasing the prejudgment or postjudgment interest rate. I think it's a prejudgment interest rate. And then finally, we contend that the district court should not have granted a PGR on the basis of Cahaley, which is a Connecticut Supreme Court precedent on point. In Cahaley, the Connecticut Supreme Court held that a PGR cannot issue in aid of a foreign proceeding. There must be an intent to resolve the merits of the Connecticut basis. Was there not a Connecticut action here? There was, but the Connecticut – but in October of 2014, when Sberbank realized that judgment was near at hand, it signaled to the court that it was going to change its position, not litigate the case here on the merits, amend the complaint, and set forth a claim for the recognition and enforcement of foreign judgment. Now Sberbank backed away from that position along the way, presumably because it realized the problems created by Cahaley, but there was nothing ever litigated on the merits. The Russian outcomes subsumed entirely the entire Connecticut case. So with the benefit of retrospect, with the benefit of retrospect, isn't the existence of the Connecticut action an adequate predicate for the PGR? If there was an intent to truly litigate something on the merits. So you're asking us to look into the intent of a party? As demonstrated by the actions of the client during litigation. What is your best case for that proposition, that we need to look at the intent of the party as opposed to the existence of the action? I would say that's Cahaley. Just as a housekeeping matter, you do not argue with respect to the counterclaims for the ultraviaries execution of the credit agreements or the abuse of process. Is that correct? Correct. We make no argument on the ultraviaries for the abuse of process. The execution of the credit agreements, I'm not sure. The ultraviaries. That refers to. Our principal defenses and counterclaims are based on the nonforgery issues that were never actually litigated under forgery defenses that were litigated in Russia. Thank you. You have reserved two minutes for rebuttal, I believe. Mr. Rubens. May it please the Court. My name is Daniel Rubens. I represent the Apolyse for Bank of Russia. The district court was correct here to hold Mr. Treisman to his obligations under the guarantees. That judgment should be affirmed on the basis of preclusion and for the independent reason that there's no competent evidence to support the defenses or counterclaims. Starting off with the argument about fairness, here this is a situation where actions speak louder than words. Mr. Treisman was content to advocate for this case to be litigated exclusively in Russia up until he lost in that forum. And the brief for Mr. Treisman doesn't develop any argument about fairness. The grounds for nonrecognition of a judgment under Connecticut law are very narrow, and there's no contention in the brief that recognition was improper. And only a footnote suggesting that there was some need to conduct an additional fairness analysis. What's your view on the expert report your adversary was talking about? I'm sorry. What's your view on the expert report that your adversary was talking about? If Your Honor is referring to the expert report on preclusion law, explaining the meaning. Yes, I'm sorry, yes, yes. Here I think it's important to parse out that we've asserted two grounds of preclusion. Article 134, which is a claim preclusion principle, and Article 61, which is issue preclusion. Now, this compulsory joinder idea comes up under Article 134, and there the initial report really didn't address anything beyond the plain text of Article 134, and that was when we moved on, for summary judgment on preclusion. He had an opportunity to oppose. He pretty much just pointed to the text. It was only after the district court ruled against him on the question of what Russian claim preclusion law meant that we got a second report with some case law citations. Unrebutted. So here's my problem. As I said to your adversary, I'm not an expert in Russian law. Rule 44.1 requires the courts to determine as a matter of law what foreign law is, in this case Russian law is. And you, so far as I'm aware, cited no treatise, provided no expert report, at least on the other side, there's an expert report that purports to explain what Russian preclusion law, either as a matter of issue preclusion or claim preclusion, under Article 61 or 134, is. So I look to what I've got on the record, because there are no treatises, no nothing. And the expert report, and you can quibble about the timing, but we've got a record on appeal, says that with respect to claim preclusion, there is no claim preclusion for claims that have not actually been litigated, but that could have been litigated in the Russian litigation. What on your side of the ledger, in the record, do you point to besides the language of 134? Well, for Article 61, to be clear, we did submit commentary and we submitted some case law on the type of determination. For Article 134, we are relying on the plain statute. The statute talks about the same parties, same cause of action, same subject matter. And our view is that statute clearly applies. It's not unprecedented for a court to apply a clear statute, especially in a civil law jurisdiction like Russia, which is the primary source of law. The Southern District's done it in Abdel Hamid, where the judge disregarded conclusory expert testimony when there was a clear statute on point. So we briefed it that way, they responded that way, the district court viewed it as clear. And again, it was only after Mr. Treisman got that ruling and got a second report to fill the gaps. But even if this court looks at that report and looks at the cases, they're all an apposite. So again, you're really just left with- Where does 134 say that it precludes any matters that Mr. Treisman could have asserted as a counterclaim that he did not actually assert? It certainly doesn't contain an express statement to that effect. Well, I thought you said that you're relying on the plaintext of 134. I think subject matter and causes of action refer to a claim to enforce the guarantees and the circumstances surrounding the execution of the guarantees and the default. Now, if Your Honor disagrees and views that statute as not controlling or not clearly answering the question, then the district court was free to look to domestic or Connecticut law to fill the gap. Because on the other side, again, we only have this expert's assertions and citations to an apposite case law. So if we're in a situation where we're not sure whether- Do you agree or disagree that Russian preclusion law as a matter of Connecticut law applies? The Connecticut recognition statute says the judgment has the same effect as it does in the court of the rendering jurisdiction. But there's a restatement and lots of law, and again, in the circuit, that says you may apply a greater preclusive effect where there's a difference. So it was correct for the district court to look first at Russian law. It found that Russian law was the same as Connecticut law, which we also briefed. But if this court feels that Russian law is narrower, then this court is free to look to Connecticut law as well. And that's what the district court did here in its decision. So you're saying you have it either way, either Russian. And if Russian doesn't work, then Connecticut law applies under the law that binds the district court. Well, it's the Connecticut court that faces the consequences of a narrow preclusion rule. And that's what the court said in Alfada, which is you can consider the policies behind our preclusion rules, including against vexatious litigation and the need for finality. And we're the ones in the United States that face the consequences of that. Now, if I could turn to this question of new evidence, supposedly in support of the forgery claim. Our brief pointed out that none of this evidence was properly before the district court because it all came in through submissions after the close of briefing on the summary judgment motion. There are also preclusion reasons that that new evidence doesn't change the analysis. The district court ruled on this and said it was not before. The district court entered an order saying that it would decide the summary judgment motions on the papers unless good cause was shown. And then it was only after that that the letter came in and the court issued its decision. So it didn't expressly talk about the untimely submission, but I think the best inference I think from the order is it wasn't part of the record. But even if you look at that, Mr. Treisman's own expert says as a matter of claim preclusion law, new evidence doesn't change the claim. It doesn't modify the claim. So even if there's some issue preclusion exclusion under claim preclusion, it's still barred if there's evidence that he could have brought and didn't, and that's a 1628 to 29. And here's another situation where if Article 61 seems clear to me, but if there's some question about what it means in this circumstance, Connecticut law clearly doesn't allow you to come in with additional evidence that you could have had before and say that the judgment before wasn't final. Turning to briefly pre-judgment interest and the pre-judgment remedy, the pre-judgment interest follows from Article 395, which is a Russian mandatory norm that applies to situations where a creditor is deprived of its funds. And in our brief, we pointed to the operative version of that statute and guidance from the Russian courts that it applies to guarantees. There's no reason to think that it's suspended here. It doesn't matter what the agreements say about penalties or things like that, because the creditor in our circumstance is entitled to elect. On the pre-judgment remedy, the rule, I agree, is in Cahaley, but the Connecticut appellate authority interpreting that makes clear you don't have some freewheeling inquiry into intent. You look at, well, is there an independent cause of action? Here we brought a claim for breach of the guarantee. We litigated that claim on the merits. We moved for summary judgment on the merits. It was only after we got an enforceable Russian judgment that we added an additional ground on preclusion. And if I could just say a word on the merits here, which we presented as an alternative basis, this is a forgery claim where we have a Connecticut notary's signature on the first agreement that was executed in Connecticut. Mr. Treisman was not a stranger to this transaction. He financed it. He was on the board of Sealand. The credit agreement conditioned extension of credit on his execution of a guarantee. The bank has his passport. It has his consent to use personal information. So when the default was called and when he was notified of the default, his first response wasn't, you know, what are you talking about? I don't know about this guarantee. It was to try and negotiate a restructuring of the debt without challenging a default, which is not a plausible reaction if you've never signed the guarantee. So this is a situation where this Court would be free to affirm on the alternative grounds which are developed in our fully brief summary judgment motions, which are addressed both to the principal forgery defense and all these other nonforgery defenses and counterclaims. Kennedy. I'm sorry. You said that was in the briefs in the district court. Right. We've highlighted. Does that suggest not in your briefs? No, in the briefs here, too. I just wanted to make clear that even though we moved on forgery and went on forgery, there is a fully submitted set of summary judgment motions. We've made the arguments in our brief in this Court as to all the counterclaims that he's asserting on appeal. The bad faith, I'm sorry, the ultra vires claim is not being challenged. And then we also explained that we marshaled evidence of forgery. Let me go back to I think what is the primary issue, at least for me, which relates to the counterclaims in Russian preclusion law. Why shouldn't we have a rule consistent with Rule 44.1 that says that if you are going to rely, if a party is going to rely on foreign law, in this case Russian preclusion law, it must affirmatively put something in or reference a treatise or provide an expert report. And it can't, as a general matter, not necessarily a hard and fast rule, but it can't just be in the business of attacking an expert report about that very law that's provided by its adversary. Your Honor, Rule 44.1 makes clear that foreign law is a question of law. And I want to resist the premise that we didn't put in anything. We put in the statute. And if this Court has a question of domestic law, that's going to be a question of domestic law. So what I ask you, and I think that you answered this correctly, is 134 by its terms doesn't clearly preclude the counterclaims here. There may be some other language that you want to point us to, but 134 doesn't talk about claims that are not asserted. Is that correct? We disagree with that reading, but I understand that your Honor's support. Okay. Let's go to 134. Tell me where it says. Well, when we read subject matter and cause of action, he — What does that mean? Well, according to Mr. Treisman's expert, subject matter means claim demand. So we would say that's a claim for, you know, breach of the guarantee. And the cause of action and claims relating to the breach of the guarantee arising from that. And cause of action is factual circumstances. And the factual circumstances are the circumstances of the execution of the guarantee and the default. I understand your Honor's position. Do you agree that there's some ambiguity about this? Or are you relying on the clarity of the language when you say that 134 precludes claims that are never asserted in the underlying litigation in Russia? Well, if that's what it means, it's unclear. No, no, no. Yes or no? Do you agree that it's ambiguous? I would agree that it's ambiguous. Okay. So if it's ambiguous, then isn't it helpful to have an expert report or something else that provides us with some history behind or regarding Article 134? Well, if we had had the case last night. That's also a yes or no answer. Yes, that would be helpful. But expert reports come with expense. And they have to respond to what we're given. Again, this was initially briefed as a matter of plain language. So all we have as a matter of the history of Article 134 is an expert report from Mr. Arkulov, a lawyer who purports to be an expert in Moscow on Russian law, and it's from the other side. We have his unsupported assertions in apposite case law. And if this Court believes that the provision is ambiguous, either as a matter of gap-filling, this Court can apply Connecticut law, or this Court, if it views the Russian provision as narrower, can apply Connecticut law because their important domestic policy is at stake. And again, if Article 134 means what the expert says, it's unclear what work it's doing beyond Article 61's issue preclusion, if it's only going to apply to issues that are actually litigated. The experts conceded that it's a claim preclusion principle. There's sensible reasons why claims should be brought in one action and not split across multiple actions. But we submit that the plain text controls that the Court should approve. Thank you. Thank you. Mr. Golden. Your Honors, it's important to point out that in several instances the non-forgery defenses and counterclaims arose from facts that post-State the judgment. In particular, the counterclaim based on Article 10 and the breach of the duty of good faith in disposal of the collateral stems from the sale of a Moscow-based shopping center by a spare bank through the bankruptcy process at an artificially depressed price, and also under suspicious circumstances. That shopping center was sold three months after the Russian judgment was entered. Therefore, that claim could not possibly have been asserted earlier, notwithstanding that I agree with the Court's observations about the ambiguity and the lack of clarity in Article 134. As far as the rule that ---- Questions, not observations, but go ahead.  I'm sorry. It's a question, not an observation. Yeah. Excuse me. A question, Your Honor. Of course. And certainly, the concept of who bears the burden of establishing foreign law of preclusion should weigh heavily in the Court's mind when conducting the analysis. In this case, where the movement comes forward with a motion for summary judgment on an issue as esoteric and nuanced as preclusion, where the case law indicates that preclusion is to be strictly construed because it deprives a party of its day in court, there's a confluence, a cascading volley of factors that militates in favor of a rule that set the ---- requires the movement to establish foreign law of preclusion with absolute clarity. And it is a ---- That makes sense to me. But, of course, the language of Rule 44.1 says nothing about the burden. It puts the burden on the courts to determine what the ---- what foreign law is. The case law does. And, for example, in the global case that we cite, which is the only case and the best case that we found that deals with an identical issue, in the global case, the Northern District of Illinois held that the burden is on the moving party to establish the foreign law of preclusion. And blending foreign law of preclusion with American law does not get you there. Mr. Golden, what you want is a reversal and then another trial before Judge Edgington? We seek reversal and remand. And we believe that this case belongs in front of a jury for exactly the closing argument that my adversary made. Jury in Connecticut. Jury in Connecticut. Well, what is your view on the applicability of Connecticut preclusion law? The Connecticut preclusion law is inapplicable. The parties agree below that it is the Connecticut choice of law analysis requires the court to apply the Russian law of preclusion. And the parties both brief the Russian law of preclusion without regard to their Connecticut counterparts. And to say that I have not established the foreign law of preclusion and, therefore, use a Connecticut gap filler as an invitation to relieve a party from their burden of proof and create a perverse situation where if the foreign law is unhelpful, unfavorable, you can simply not cite the foreign law and hope that a district court, pursuant to 44.1, has to do something so it looks to American law to fill the gaps. That's not a gap filler. That's a failure of burden. But you agree that if it were – look, if Connecticut preclusion law and Russian preclusion law were the same – well, let's put it this way. If Russian choice of law yielded the answer that Connecticut law applied, you would lose. Your Honor, I must confess, I don't – I've never looked at nor have I analyzed Russian choice of law. No, no, no. Connecticut choice of law. There are only two options, Russian preclusion law or Connecticut preclusion law. I will concede wholeheartedly that on the forgery defenses, if you apply the Connecticut law, our case would be far more difficult. On the nonforgery defenses, I don't agree with the application of Connecticut preclusion law, who will be barred because the events arose from facts and circumstances that postdate the judgment, including the disposal count. It's not fair because it's in your papers and I could read it, but would you tick off for me so I don't forget the nonforgery issues? Your Honor, I'm so sorry. It's my fault. Would you tick off for me the nonforgery issues that you just mentioned? Or look, just point me – you don't have to read it to me. They are set forth in Defenses 5, 6, 8, 9, 10, 11, 16, and 17 in Counterclaims 1, 2, 3, and 4. Generally speaking, they involve allegations that, one, the bank has received significant payments that are not accounted for. Two, the bank has not explained what happened to valuable collateral, including publicly traded stock that was pledged as collateral. Three, the district court misunderstood that we presented evidence of 201 separate payments that went from the debtor to the creditor, which were never accounted for in the records. These issues were raised in both the Russian court and the Connecticut court or only the Connecticut court? They were solely raised in the Connecticut court. They were never raised in the Russian court. They were never actually litigated in the Russian court. And they were solely raised in the Connecticut court because the Connecticut case was developing on its own track and the Russian case was developing on its own track, and we were duty-bound in response to a complaint which was upheld to present affirmative defenses, which is what we did. There was no attempt to end the round of foreign court. Thank you very much. Thank you. We'll reserve decision.